DALTON STATE BANK, APPELLEE, V. JACOB W. ECKERT ET AL., APPELLANTS.

282 N. W. 490

FILED NOVEMBER 26, 1938. No. 30406.

*M. V. Beghtol, A. J. Kinnersley* and *Golden P. Kratz,* for appellants.

*Neighbors & Coulter* and *Paul L. Martin, contra.*

Heard before ROSE, C. J., EBERLY, PAINE, CARTER and MESSMORE, JJ.

PAINE, J.

This case involves the right of priority between an attorney's lien and the right of offset of a judgment creditor. From an adverse ruling, the attorneys have appealed.

As the question at issue grew out of several lawsuits, it is necessary, for a proper understanding, to make a rather complete statement of the facts.

Defendant Jacob W. Eckert lived in Morrill county, and became indebted to the Dalton State Bank in the sum of $2,900. He gave a note secured by a second mortgage upon real estate and also by a mortgage upon certain chattels. In 1932, the said bank having temporarily suspended business, its cashier, for the purpose of taking additional security, divided this same loan and the interest due thereon into two notes, one of $900 and one of $2,137.75, and, in addition to the security already given, the cashier took a new chattel mortgage upon farm implements, machinery, live stock, and other chattels to secure the new $900 note, and agreed to return to him the old note of $2,900 if the bank reopened, but, in the event it failed to reopen, then the two new notes and mortgage would be returned, but no return was ever made of either.

On January 13, 1934, the First Trust Company of Lincoln, as trustee, started to foreclose its first mortgage upon Eckert's land, and on March 5, 1934, the Dalton State Bank filed a cross-petition on its second mortgage on this same land, and a decree was entered April 16, 1934, finding the amount due on the first mortgage to be $9,097.50, and on the second mortgage the sum of $3,618.71.

On April 9, 1934, which was shortly before the entry of the above decree of foreclosure, the Dalton State Bank brought an action in replevin in the district court for Morrill county, and replevied all the chattels covered by the chattel mortgage given to secure the $900 note. The chattels so replevied were sold, and this amount was credited on the $900 note given by Eckert.

In said action Eckert charged in his answer and cross-petition that the indebtedness involved in the replevin action was the same as the indebtedness represented by his original note of $2,900, and that no permission of court had been obtained to commence the action at law while the foreclosure action was still pending.

On June 29, 1934, an agreement for attorney's fees was entered into between Jacob W. Eckert and attorneys Golden P. Kratz, of Sidney, and A. J. Kinnersley, of Dalton, in which Eckert agreed to pay them $1,000 out of any money or property to be recovered in the replevin action brought by the bank under which his farm stock and equipment were sold, or out of any judgment secured against the Dalton State Bank, and if no judgment was secured the attorneys were to receive no fee. It was clearly stated in the contract that, if the judgment secured against the bank was $1,000 or less, the attorneys should receive it all. It was also provided in the contract that other suits were pending against Eckert and that they should continue to represent him in the other cases, and their fees in such other cases should be approximately double what ordinary attorney fees would be, because of the fact that they could only be paid in case they secured a judgment against the bank in the replevin case.

After trial therein, defendant Eckert secured a judgment for damages against plaintiff bank for the tort it had committed in the replevin case. Eckert's attorneys had filed notice of their lien in the replevin case on October 2, 1934, and shortly after the entry of the judgment in favor of Eckert he duly assigned the same to his attorneys. This judgment was assigned in Morrill county, and the Dalton State Bank was located in Cheyenne county; therefore, in June of 1935 a transcript was filed in Cheyenne county, where the bank is located, and the bank asked to have the execution of the judgment of Eckert enjoined until such time as it could go into the Morrill county district court and secure a deficiency judgment against Eckert there on the foreclosure, which it claimed would be paramount to the attorneys' lien which the attorneys held.

The foreclosure case was pending for a considerable time, due to stays of various kinds, but on February 17, 1937, it came on to be heard upon the application of the bank for a deficiency judgment upon its second mortgage. The court found that the original note was for $2,900, upon which

$228.92 had been paid; that on September 26, 1934, the bank had filed a remittitur, and a balance remained due and unpaid in the sum of $3,292.11, with interest at 10 per cent., which was duly entered as a deficiency judgment.

After the deficiency judgment was entered, the court held that the right of offset to the bank because of this deficiency judgment was superior to the attorneys' lien and the judgment which had been assigned to them, and that ruling is assigned as error and brought here for review.

The plaintiff bank contends that Eckert's attorneys charged him a fee of $1,000 in their contract with him, when they well knew that the property taken in the replevin action had been appraised April 10, 1934, as of the aggregate value of $915.

It is further charged by the bank that the contract between Eckert and his attorneys was entered into for the purpose of defrauding his other creditors, and that, as they had been attorneys for him from the beginning of the first case, they were well advised of his situation.

This court faces the question whether the judgment of the plaintiff and the judgment against the plaintiff obtained by the defendant arose out of the same subject-matter; and, if the two judgments arose out of the same subject-matter, can a judgment based on contract be offset against a judgment arising on tort?

Section 20-816, Comp. St. 1929, provides: "A set-off can only be pleaded in an action founded on contract, and must be a cause of action arising upon contract, or ascertained by the decision of the court."

One of the early cases is that of *Cooper v. Bigalow*, 1 Cow. 206. This case was decided by the New York supreme court in August, 1823. A set-off was pending at the previous term, but Bigalow, who was then in prison under the insolvent act, had assigned a judgment in his favor to his attorney. The court said: "The right of set-off had attached; and the attorney had full notice that it was claimed, at the time he took the assignment from Bigalow."

In *Kisthardt v. Betts*, 321 Pa. St. 270, 183 Atl. 923, the

defendants were permitted to set off their judgment against a judgment held by the plaintiff and assigned by the plaintiff to a third person in consideration of attorney's fees, notwithstanding defendants did not assert the right to set-off when plaintiff brought the suit. The court said: "The set-off of one judgment against another is not a legal right, * * * but is allowed by the courts under their inherent powers in the administration of justice and is governed by the principles of equity;" and adds that in Pennsylvania each case is to be determined on its own circumstances and merits.

The case of *Commercial State Bank v. Ketchum*, 1 Neb. (Unof.) 454, 96 N. W. 614, is quite in point. Commissioner Pound said: "Where a decree enjoining collection of a judgment and allowing a set-off against it, conditions the injunction upon payment into court of a sum more than sufficient to satisfy an attorney's lien upon such judgment, it is unnecessary to consider the relative priorities of the right to a set-off and such attorney's lien." This case is in point with the case at bar in that the plaintiff replevied certain personal property, but, by reason of the insufficiency of the affidavit, after a jury trial the defendant recovered judgment for the value of the property replevied, and after trial a decree was rendered allowing the set-off, but the court did not pass upon the priorities of the attorney's lien and the right to set-off. The defendant there was insolvent, and it is admitted that the defendant in the case at bar had no property left and was working in a café at Sidney.

The record in the case at bar clearly shows the insolvency of Eckert; and insolvency was recognized as sufficient ground for allowing set-off in *Wells v. Cochran*, 88 Neb. 367, 129 N. W. 533, in which it was held: "Where peculiar equities intervene between the parties, a court of equity may enjoin the collection of a judgment until the debtor litigates an unliquidated claim against his creditor, and if the debtor succeeds the court may set off the judgments so far as one may equal the other." This controversy was

so close that it came to this court three times. Also to the same effect see *State v. Farmers State Bank,* 113 Neb. 497, 203 N. W. 629; *Rogers v. Buettgenback,* 114 Neb. 834, 211 N. W. 168; 7 C. J. S. 1197, sec. 232; *Thrall v. Omaha Hotel Co.,* 5 Neb. 295; 24 R. C. L. 806, sec. 14; 9 Neb. Law Bulletin, 346; *Jacobsen v. Miller,* 50 N. Dak. 828, 198 N. W. 349, and annotation as found in 34 A. L. R. 317.

The doctrine of set-off is of equitable origin, and not limited to demands which have been reduced to judgment. An unsatisfied judgment is a "thing in action" as respects statutory right to set off an assigned judgment against another judgment, and the assignee stands in same position as assignor at time of assignment. Where different claims arise in relation to the same matter, it is undoubtedly equitable that these equities should be arranged between the parties without reference to an attorney's lien, which is only on the clear balance due to his client after all the equities are settled. "If equities subordinate an attorney's lien to the right of set-off where there are two judgments in the same action, * * * it is immaterial that one may be founded upon contract and the other upon a tort." *Lee v. Sioux Falls Motor Co.,* 65 S. Dak. 401, 274 N. W. 614. See, also, *Yorton v. Milwaukee, L. S. & W. R. Co.,* 62 Wis. 367, 21 N. W. 516, 23 N. W. 401.

In *Field v. Maxwell,* 44 Neb. 900, 63 N. W. 62, it was held: "An attorney's lien for services performed in prosecuting an action is not measured by the amount which his client claims to be his due, but cannot exceed the amount in the hands of the adverse party belonging to his client or the amount owing to him, and is not paramount to any proper set-off or other available defense in such action." See, also, *Richardson v. Doty,* 44 Neb. 73, 62 N. W. 254; *Jones v. Driscoll,* 46 Neb. 575, 65 N. W. 194; *Stone v. Snell,* 86 Neb. 581, 125 N. W. 1108.

In the case at bar, the exact amounts of the judgments against each party have been determined by the court, and injustice is prevented by allowing a set-off. The plaintiff bank did not lose its right to a set-off because defendant

Eckert became insolvent, or because he had assigned the judgment he secured to his attorneys, as an attorney's fee of $1,000 for work that other attorneys testify was of the value of $150.

After reviewing all the facts in the case at bar, this court holds that the attorney's lien was subject to the right of the judgment debtor to set off its deficiency judgment. The trial court listened to the testimony of all the parties to this litigation, and had a full knowledge of the subject-matter, and held that the plaintiff had a lien upon the proceeds of the mortgaged property, even though it held that the plaintiff bank then had no present right to maintain the replevin action. The trial court was right in holding, under the rather peculiar facts in this case, that the judgment based on tort could be offset against a judgment arising on contract where both judgments arose out of the same subject-matter.

AFFIRMED. ·